UNITED STATES of America ex rel.
George DIBLIN, Petitioner,

v.

Harold W. FOLLETTE, Warden of Green
Haven State Prison, Respondent.

No. 68–C–520.

United States District Court
E. D. New York.

Dec. 16, 1968.

John DeWitt Gregory, New York City, for petitioner, Alfred Lawrence Toombs, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen., of the State of New York, New York City, for respondent, Brenda Soloff, Asst. Atty. Gen., of counsel.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge.

In this habeas corpus proceeding petitioner alleges that a 1942 conviction was obtained by a coerced confession. Previously in this Court he alleged that in a variety of ways he was denied his right to appeal that conviction.

Despite years of consideration by more than a score of trial and appellate judges, we are almost as far as we ever were from an answer to the mixed question of fact and law posed by petitioner: were his constitutional rights violated by the state's use of a coerced confession or by denial of the right to appeal? While the law's response in this twenty-five year old case may never be satisfactory because of the lapse of time, petitioner is entitled to an opportunity to prove his claim. An omnibus evidentiary hearing in this Court is ordered to try the merits of all claims—whether or not previously raised—respecting the constitutionality of the 1942 conviction.

Since there is neither a central filing system nor a single state legal office representing New York in post-conviction proceedings, we cannot be certain of the number of applications arising out of petitioner's 1942 conviction. So far as we have been able to determine with the aid of the New York Attorney General, present and former counsel of petitioner, and our own examination of the records of this and other courts, there have already been nine independent applications to trial courts—three in the federal courts—and eight appellate decisions. There has been an evidentiary hearing on one aspect of the right to appeal allegations and none on the merits of the coerced confession claim.

The known applications are listed below:

| | Date | Court | Claim | Disposition |
|---|---|---|---|---|
| 1. | March, 1944 | Clinton County (court unclear) | denial of right to appeal | dismissed at petitioner's request (petitioner was released on probation in May, 1945) |
| 2. | November 3, 1960 | County Court (Queens) | sentenced in absence of counsel | denied without hearing; affirmed by Appellate Division, People v. Diblin, 13 A.D. 2d 700, 215 N.Y.S.2d 739 (2d Dep't 1961); leave to appeal to Court of Appeals denied; certiorari denied, 369 U.S. 803, 82 S.Ct. 643, 7 L.Ed.2d 551 (1962) |
| 3. | March 28, 1962 | U. S. District Court, N.D.N.Y. | coerced confession and sentenced in absence of counsel | denied for failure to exhaust state remedies; certificate of probable cause denied by Court of Appeals; certiorari denied, Diblin v. La Vallee, 372 U.S. 980, 83 S.Ct. 1116, 10 L.Ed.2d 145 (1963) |
| 4. | May 27, 1965 | Supreme Court (Queens) | coerced confession | application denied after hearing solely on question whether issue of voluntariness raised at petitioner's trial; affirmed by Appellate Division, People v. Diblin, 27 A. D.2d 989, 281 N.Y.S. 2d 981 (2d Dep't 1967); leave to appeal to Court of Appeals denied |

| Date | Court | Claim | Disposition |
|------|-------|-------|-------------|
| 5. November 15, 1966 | Supreme Court (Queens) | sentenced in absence of counsel | application denied without prejudice because coram nobis not proper remedy and because of hearing scheduled to be held shortly on related claim (see (6) below); notice of appeal filed on Feb. 27, 1967 |
| 6. January 27, 1967 | Supreme Court (Queens) | denial of right to appeal by being held incommunicado | application denied after hearing; aff'd, 30 A.D.2d 1052, 295 N.Y.S.2d 411 (2d Dep't 1968); leave to appeal to Court of Appeals denied. |
| 7. July 12, 1967 | Supreme Court (Queens) | failure of trial court to inform petitioner of right to appeal | denied without hearing on ground that trial court is under no such duty if petitioner had retained counsel |
| 8. January 3, 1968 | U. S. District Court, E.D.N.Y. | denial of right to appeal by bad advice and by being held incommunicado | denied for failure to exhaust state remedies (see (6) above; appeal then pending); certificate of probable cause denied [An earlier letter from the petitioner to the clerk of this Court, dated January 7, 1966, making similar claims and requesting forms was, under the then practice, not treated as an application for a writ of habeas corpus.] |
| 9. June 6, 1968 | U. S. District Court, E.D.N.Y. | coerced confession | present application |

———◆———

Petitioner is presently incarcerated in Green Haven State Prison, serving a term of eighteen to twenty years. He was sentenced on June 24, 1959, as a second felony offender by the Court of General Sessions, New York County, after pleading guilty to a charge of incest. See United States ex rel. Diblin

v. Follette, 268 F.Supp. 674 (S.D.N.Y. 1967). He seeks to invalidate a 1942 conviction for sodomy after a jury trial in County Court, Queens County, which formed the basis for the sentence he is now serving. See United States ex rel. Durocher v. LaVallee, 330 F.2d 303 (2d Cir.), cert. denied, 377 U.S. 958, 84 S.Ct. 1921, 12 L.Ed.2d 1048 (1964) (person sentenced as second offender may seek to invalidate first conviction).

At the 1942 trial petitioner was represented by counsel. No appeal was taken. The alleged infringement of constitutional rights raised in the present application involves a confession which purportedly was "obtained * * * by intimidation, coercion, inducement, and brutal physical force."

There is no transcript of the 1942 trial. Nevertheless, some idea of the evidence introduced may be obtained from the transcript of the grand jury proceedings and the trial clerk's minutes. From the former it appears almost certain that a full confession, in one or more written versions, was available. The latter indicates that petitioner's alleged young victim, the police officer who confronted petitioner with the victim, and a number of other witnesses testified on the prosecution's direct case; that petitioner testified as the sole witness on his own behalf; and that the police officer's partner and another boy whom petitioner had allegedly sexually molested, and before whom petitioner had made an oral confession, testified on rebuttal. With an available confession, obtained by mere confrontation in the way described in the grand jury minutes, it almost certainly was used by the prosecution at the trial. The petit jury conferred for less than forty minutes before finding petitioner guilty.

Prior to launching the present attack in this Court on the use of the confession to obtain the 1942 conviction, petitioner, as is indicated by the above chart, sought a writ of error coram nobis in the state courts on the same ground. Under New York law an evidentiary hearing on coercion is required only if the defendant had objected to the admission of the confession or the trial judge had charged the jury on voluntariness. People v. Huntley, 15 N.Y.2d 72, 77, 255 N.Y.S.2d 838, 843, 204 N.E.2d 179 (1965). Since there was no transcript of petitioner's 1942 trial, a hearing was held in Supreme Court, Queens County, to determine whether the voluntariness of petitioner's confession had been put in issue; the question of voluntariness itself was not tried.

The only two witnesses at this hearing were petitioner and his 1942 trial attorney. Petitioner testified that an objection had been made to the admission of his confession. His former attorney, who at the time of this hearing was eighty years old, had no independent recollection of the events. The court found that although a confession had been used, its voluntariness had not been put in issue. It held that petitioner was not entitled to a hearing on the merits of his claim. This decision was, as will be seen from the above chart, unanimously affirmed by the Appellate Division, People v. Diblin, 27 A.D.2d 989, 281 N.Y.S.2d 981 (2d Dep't 1967), and leave to appeal to the Court of Appeals was denied by a judge of that court. The record supports the narrow finding of the state trial court (as it would support a contrary finding); we assume, for present purposes, that the issue of coercion was not raised by objection or charge at the 1942 trial. 28 U.S.C. § 2254(d), (e).

Two legal issues are now raised. May we consider the coercion attack as petitioner requests? May we consider any other constitutional attacks not included in the present petition?

## COERCION OF CONFESSION

 The question is whether a federal court is precluded from considering the merits of petitioner's coerced confession claim by petitioner's failure to raise the issue of voluntariness at his trial. Under the Supreme Court's decision in Fay v. Noia, 372 U.S. 391, 438–439, 83 S.Ct. 822, 849, 9 L.Ed.2d 837

(1963), the answer depends upon whether petitioner "understandingly and knowingly" chose not to avail himself of "the orderly procedures of the state courts and in so doing has forfeited his state court remedies." See also Henry v. State of Mississippi, 379 U.S. 443, 452, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965) (dictum: adequate state procedural ground does not deprive federal court of habeas corpus jurisdiction); Jackson v. Denno, 378 U.S. 368, 370, n. 1, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). "A choice made by counsel not participated in by the petitioner does not automatically bar relief." Fay v. Noia, 372 U.S. at 439, 83 S.Ct. at 849. Compare McNeil v. State of North Carolina, 368 F.2d 313, 315 (4th Cir. 1966) ("nor should waiver be found in the absence of some affirmative conduct on the part of a defendant evidencing a deliberate and conscious rejection of a constitutional guarantee"); Labat v. Bennett, 365 F.2d 698, 709 (5th Cir. 1966), cert. denied, 386 U.S. 991, 87 S.Ct. 1303, 18 L.Ed.2d 334 (1967) (showing of considered choice required); Cunningham v. Heinze, 352 F.2d 1, 4, n. 2 (9th Cir. 1965), cert. denied, 383 U.S. 968, 86 S.Ct. 1274, 16 L.Ed.2d 309 (1966); United States ex rel. Bruno v. Herold, 246 F.Supp. 363, 367–368 (N.D. N.Y.1965), rev'd on other grounds, 368 F.2d 187 (2d Cir. 1966) (per curiam) with Nelson v. People of State of California, 346 F.2d 73, 81 (9th Cir.), cert. denied, 382 U.S. 964, 86 S.Ct. 452, 15 L.Ed.2d 367 (1965); United States ex rel. Schaedel v. Follette, 275 F.Supp. 548 (S.D.N.Y.1967); United States ex. rel. Moore v. Follette, 275 F.Supp. 416 (S.D.N.Y.1967). See also, e. g., Lay, Problems of Federal Habeas Corpus Involving State Prisoners, 45 F.R.D. 45, 55–66 (1968); Hill, The Inadequate State Ground, 65 Colum.L.Rev. 943, 997 (1965) (in Fay v. Noia, the Court purported "to abolish forfeitures altogether," but "is now beginning to draw back"); Reitz, Federal Habeas Corpus: Impact of an Abortive State Proceeding, 74 Harv.L.Rev. 1315, 1373 (1961) ("waiver should be confined to knowl-edgeable before-the-fact choice on the part of defendants").

■ The issue of knowing waiver was not considered by the state courts nor can it be resolved solely upon the basis of the record of the state's evidentiary hearing. Cf. Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 297, n. 3, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (where claim denied on the merits in post-conviction hearing, waiver irrelevant). Moreover, pursuant to state law under *Huntley,* this issue of knowing waiver is apparently not a subject on which the state court will inquire (because the coercion issue was not raised at the trial) so that no further exhaustion of state remedies need be shown. 28 U.S.C. § 2254(b).

■ The question of waiver in this case cannot be satisfactorily decided separately from the issue of coercion. If, on the one hand, there was no evidence of coercion there was nothing to waive. Persuasive evidence of coercion, on the other hand, would support a finding of lack of knowing waiver. "There is no suggestion of any strategic reason which might have led counsel to the deliberate decision not to rely on" coercion. United States ex rel. Hurston v. McGrath, 289 F.Supp. 1 (E.D.N.Y. 1968). Since any hearing on the waiver issue requires a full consideration of the merits of the coercion issue as an evidentiary matter, sensible use of judicial energy suggests that we take this opportunity to decide the issue of coercion as a material proposition.

■ We recognize the difficulties inherent in attempting to reconstruct events which took place in 1942; many of the participants are probably unavailable, memories have faded, there was no appeal so that no transcript of the trial is available, and the only person claiming to remember is the petitioner whose recollection has been clouded by a quarter of a century of brooding over the conviction. But, as the Supreme Court has reminded us, the federal trial judge "clearly has the power—and, if

the ends of justice demand, the duty—to reach the merits." Sanders v. United States, 373 U.S. 1, 18–19, 83 S.Ct. 1068, 1079, 10 L.Ed.2d 148 (1963).

## DENIAL OF APPEAL AND OTHER CONSTITU- TIONAL GROUNDS

Petitioner's claimed denial of the right to appeal thus far has been based upon the failure of the trial court or his attorney to inform him of the right, absence of counsel at sentencing (where presumably he would have been informed), and his being held incommunicado following sentencing. The state has had an evidentiary hearing only on the incommunicado point and decided it, as the above chart shows, adversely to petitioner. This ruling was affirmed by the Appellate Division without opinion on October 14, 1968, 30 A.D.2d 1052, 295 N.Y.S.2d 411 (2d Dep't), and leave to appeal to the Court of Appeals was denied.

▆ Petitioner may still apply to the United States Supreme Court for a writ of certiorari. Should the Supreme Court grant certiorari and then reverse the state court decision on the right to appeal point, this habeas corpus application would be mooted. However, the remote possibility of the Supreme Court's granting certiorari as opposed to the certainty of some years' delay in waiting for a decision justifies our going forward as rapidly as possible to test the validity under the Great Writ of petitioner's continuing imprisonment. We shall, therefore, proceed on the supposition that all state remedies have been exhausted. Cf. United States ex rel. Sniffen v. Follette, 393 F.2d 726 (2d Cir. 1968) (per curiam); United States ex rel. Levy v. McMann, 394 F.2d 402, 404–405 (2d Cir. 1968).

We can assume, for the purposes of this decision, that the factual finding of the state on the narrow incommunicado point is supported. But there still has been no factual finding that the totality of circumstances were such that defendant did have an effective chance to exercise his right to appeal. See United

States ex rel. Thurmond v. Mancusi, 275 F.Supp. 508, 522–523 (E.D.N.Y.1967).

▆ Even though the habeas corpus petition in this Court raising the appeal point was dismissed for failure to exhaust state remedies and is "no longer in this court," considerations of judicial efficiency permit the matter to be considered now that state remedies have been effectively exhausted. Cf. United States ex rel. Bruno v. Herold, 368 F.2d 187, 188 (2d Cir. 1966). Under the circumstances of this case no aid to the concept or practice of federalism will be served by requiring petitioner to further exhaust all concerned by new proceedings. 28 U.S.C. § 2254(b), (c); Fay v. Noia, 372 U.S. 391, 417–420, 83 S.Ct. 822, 9 L.Ed. 2d 837 (1963) (the doctrine is one of comity, not power); cf. Roberts v. La-Vallee, 389 U.S. 40, 88 S.Ct. 194, 196, 19 L.Ed.2d 41 (1967) (per curiam); United States ex rel. Hughes v. McMann, 405 F.2d 773 (2d Cir. 1968); United States ex rel. Joseph v. LaVallee, 290 F.Supp. 90, 92–93 (N.D.N.Y.1968).

▆ It can hardly be said that the petitioner has "on the earlier application deliberately withheld the newly asserted ground." 28 U.S.C. § 2244(b). His seriatim applications directed at particular defects can be excused since he is not an attorney but a layman responding to the periodic waves of hope for release on newly discovered constitutional theories that apparently sweep through our prisons. Nor can we say, on the record before us, that petitioner has "deliberately sought to subvert or evade the orderly adjudication of his federal defenses in the state courts." Fay v. Noia, 372 U.S. 391, 433, 83 S.Ct. 822, 846, 9 L.Ed.2d 837 (1963). See also id. at 437–440, 83 S.Ct. 822 (no deliberate by-pass shown); Brennan, Jr., Federal Habeas Corpus and State Prisoners: An Exercise in Federalism, 7 Utah L.Rev. 423, 429 (1961) ("the touchstone of the discretion is simply the degree to which allowance of the writ may infringe the integrity of the state's judicial processes.").

■ The system of repeated post-conviction applications, hearings, and appeals, in the state and federal courts may serve a useful therapeutic function in keeping a prisoner occupied during a long term of imprisonment, but it is wasteful of the limited court energy available to correct injustice. Cf. United States v. Hayman, 342 U.S. 205, 212, n. 14, 72 S.Ct. 263, 269, 96 L.Ed. 232 (1952) (in several districts "up to 40% of all applications for habeas corpus * * * were so-called repeater petitions"). But cf. Note, Federal Habeas Corpus for State Prisoners: The Isolation Principle, 39 N.Y.U.L.Rev. 78, 130, n. 312 (1964) (15.5% overall repeat petitions). Failure of state courts to appoint counsel with the duty to investigate all claims of the petitioner at the time of his first application may save time in the short run, but it often proves costly of time in the long run. In reviewing the deliberate bypass rules Judge Lay recently declared:

"[I]f any one recommendation can be made to balance both the procedural interest of the state or federal court and the rights of the prisoner, mine would be that judicial concepts of conclusory pleadings, forfeiture, waiver unless a deliberate bypass is found, default or some other technical basis of decision be subjugated to an immediate and expeditious disposal of the merits of the constitutional claim raised. The fact that habeas corpus procedure does not embody the traditional principle of res judicata and that repetitive petitions may be filed should encourage liberal interpretation of pleadings and generally the appointment of counsel, at least on the initial post-conviction motion. Repetitive complaints could frequently be eliminated. The action of the state * * * is an example of how delay and technical objection really create more work for all courts rather than accomplishing the desired goal of efficient administration of the judicial process and the efficacious review of the claimed rights." Lay, Problems in Federal Habeas Corpus Involving State Prisoners, 45 F.R.D. 45, 65–66 (1968).

If it is not possible for the State to appoint counsel with facilities to investigate and raise all possible claims at the outset of state post-conviction proceedings, perhaps some form of ombudsman to investigate state prisoners' claims would prove useful. Cf. Johnson v. Avery, 393 U.S. ——, 89 S.Ct. 747, 21 L.Ed. 2d 718 (1969); New York State Mental Health Information Service (habeas corpus proceedings initiated for patients involuntarily hospitalized); N. Y. Mental Hygiene Law § 102; 12th Annual Report N. Y. Judicial Conference, 59–61 (1967); 13th Annual Report N. Y. Judicial Conference, 47–49 (1968); American Bar Association, Standards Relating to Post-Conviction Remedies, § 3.1(c) (1967) (desirability of providing in-prison counselling on the validity of claims for post-conviction relief); Barkin, Impact of Changing Law Upon Prison Policy, Pa. Prison J., Spring-Summer, 1968, at 3, 8–10 (legal assistance programs for prison inmates instituted by law schools); Note, The Burden of Federal Habeas Corpus Petitions from State Prisoners, 52 Va.L. Rev. 486, 504 (1966) (New Jersey program of screening grievances by committee of parole supervisory personnel). As the Supreme Court noted in Sanders v. United States, 373 U.S. 1, 22, 83 S.Ct. 1068, 1081, 10 L.Ed.2d 148 (1963):

"The imaginative handling of a prisoner's first motion would in general do much to anticipate and avoid the problem of a hearing on a second or successive motion. The judge is not required to limit his decision on the first motion to the grounds narrowly alleged, or to deny the motion out of hand because the allegations are vague, conclusional, or inartistically expressed. He is free to adopt any appropriate means for inquiry into the legality of the prisoner's detention in order to ascertain all possible grounds upon which the prisoner might claim to be entitled to relief."

Cf. Smith v. Settle, 212 F.Supp. 622, 628–629 (W.D.Mo.1962) ("prolonged and repeated piecemeal litigation of a convict's postconviction complaints"; "procedures should be devised for a prompt, all-inclusive review of convictions").

 Repeated applications not decided on the merits and lapse of time caused by ineffective state or federal or combined state and federal procedures may constitute a denial of due process warranting the ignoring of exhaustion formulas. See, e. g., Davis v. Wechsler, 263 U.S. 22, 24–25, 44 S.Ct. 13, 14, 68 L.Ed. 143 (1923) ("it is necessary to see that local practice shall not be allowed to put unreasonable obstacles in the way" of federal rights); Brown v. Western Ry. of Alabama, 338 U.S. 294, 298–299, 300–303, 70 S.Ct. 105, 108, 94 L.Ed. 100 (1949) (meticulous rules with respect to raising issues in coram nobis, habeas corpus or other post-conviction remedies "cannot be used to impose unnecessary burdens upon rights of recovery authorized by federal laws"); Jedby v. Swenson, 261 F.Supp. 209, 212 (W.D.Mo. 1966) (federal court may not "indefinitely postpone consideration of the federal constitutional questions presented by a particular State prisoner" even though there may still be available means of attacking conviction in state courts). Cf. Henry v. State of Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965) (showing of legitimate state interest required for non-compliance with state procedural rule to bar direct review by Supreme Court); Hill, The Inadequate State Ground, 65 Colum.L.Rev. 943, 971–980 (1965). We need not decide this due process issue in the instant case. For this Court has sufficient control over its own procedures to minimize the difficulties posed by repetitive applications. "It rests largely with the district judges to give practical form to the principles" governing the granting of evidentiary hearings. Townsend v. Sain, 372 U.S. 293, 319, 83 S.Ct. 745, 760, 9 L.Ed.2d 770 (1963).

 At the forthcoming hearing all possible grounds that the petitioner has a basis for raising will be heard. See Swisher v. United States, 354 F.2d 472, 475–476 (8th Cir. 1966); Jedby v. Swenson, 261 F.Supp. 209, 213 (W.D. Mo.1966); Note, The Burden of Habeas Corpus Applications from State Prisoners, 52 Va.L.Rev. 486, 506 (1966). We realize that this use of our procedural sword to cut through a tangled web of claims places a heavy burden on the distinguished appointed counsel and his able associates; there are no funds to even pay for the investigation required. If requested, the Court will order the prisoner removed to a more convenient place to facilitate consultation and preparation for the hearing.

Counsel will arrange with the Court for a pre-trial hearing to fix the issues to be tried, exchange lists of witnesses and documents and the like. After the pre-trial hearing, pursuant to Rule 26(d) of the General Rules of the United States District Court for the Eastern District of New York this cause will be referred to the judge sitting in Civil Part I for an evidentiary hearing.

So ordered.