**UNITED STATES of America ex rel. George DIBLIN, Petitioner-Appellee,**

v.

**Harold W. FOLLETTE, Warden of Green Haven State Prison, Stormville, New York, Respondent-Appellant.**

**No. 714, Docket 33670.**

United States Court of Appeals Second Circuit.

Argued June 13, 1969.

Decided Nov. 17, 1969.

Alfred Lawrence Toombs, Community Action for Legal Services, Inc., New York City (John DeWitt Gregory and John C. Gray, Jr., Community Action for Legal Services, Inc., New York City, on the brief), for petitioner-appellee.

John G. Proudfit, Asst. Atty. Gen., State of New York (Samuel A. Hirshowitz, First Asst. Atty. Gen., and Brenda Soloff, Asst. Atty. Gen., State of New York, New York City, on the brief), for respondent-appellant.

Before MOORE, SMITH and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge.

On April 27, 1959, George Diblin was convicted of incest in violation of former N. Y. Penal Law, McKinney's Consol. Laws, c. 40, § 1110. The judgment of conviction was entered in the former New York County Court of General Sessions (Judge Samuel Pierce, Jr.) follow-

ing a plea of guilty.[1] On June 24, 1959, Diblin was sentenced as a second felony offender (pursuant to the former N. Y. Penal Law § 1941) to a prison term of 18 to 20 years. He has since been serving his sentence in Green Haven State Prison. The second-offender sentence was based on Diblin's prior conviction of sodomy (in violation of former N. Y. Penal Law § 690) which was entered on January 12, 1942, after a trial in the former Queens County Court before Judge Thomas Downs and a jury. On January 30, 1942, Judge Downs sentenced Diblin to a prison term of 2 to 4 years, which was subsequently served at Sing Sing State Prison and Dannemora State Hospital. No appeal was taken from this 1942 judgment. Although Diblin also has a prior federal felony conviction for transportation of stolen securities in interstate commerce,[2] that conviction was not taken into consideration at the 1959 sentencing proceedings.

On June 6, 1968, Diblin applied to the United States District Court for the Eastern District of New York for a writ of habeas corpus, claiming that his 1942 conviction was based on an illegally obtained confession. Diblin had made at least eight prior collateral attacks on the sodomy conviction, alleging both that he had not been represented by counsel at sentencing and that he had been denied his right to appeal.[3] On December 16, 1968, Judge Jack B. Weinstein ordered "[a]n omnibus evidentiary hearing * * * to try the merits of all claims— whether or not previously raised—respecting the constitutionality of the 1942 conviction." United States ex rel. Diblin v. Follette, 294 F.Supp. 841, 842 (E.D. N.Y. 1968).[4] That hearing was subsequently held on April 10, 11 and 14, 1969. After the presentation of evidence by both parties, Judge Weinstein dictated the following findings into the record:

"I find that the defendant did not have counsel present at the sentencing in 1942; that he did not waive his right to have counsel present; that the absence of counsel was due to no fault of his, and that under the circumstances, sentencing should have been in the presence of counsel, in order to protect his right to appeal.

"I find that the defendant, at the time of the sentence, was in such a mental state, as reflected by his prior suicidal attempts, by the heinous nature of the crime, by the fact that he was a deserter from the Armed Forces, by the fact that his family was severely embarrassed by his conduct, and by his lack of knowledge of procedure, that it was vital for him to be advised at the time of sentencing of his right to appeal, and of the procedural steps that needed to be taken to vindicate that right.

"I find that, upon going to Sing Sing Prison, he was not informed of the necessary steps to take an appeal by prison authorities in a way that would bring to his mind clearly what needed to be done.

"In light of the fact that he was at that time in a state of severe, or substantial, at least, mental upset, as is indicated by the fact that shortly after he arrived at Sing Sing he was

---

1. The 1959 indictment returned against Diblin charged him with 43 counts for various offenses, including the incest charge to which he pleaded guilty. The remaining counts were not pressed.

2. Diblin was convicted after a plea of guilty to one count of transporting stolen United States War Bonds in interstate commerce in violation of 18 U.S.C. § 415 (now 18 U.S.C. § 2314). The judgment of conviction was entered in the United States District Court for the Western District of Washington on March 14, 1946. On March 28, 1946, Diblin was sentenced to and served a term of six years in prison.

3. A detailed examination of Diblin's attempts to obtain his release can be found in 294 F.Supp. at 843–844.

4. The Warden took no appeal from that order, and its propriety is, therefore, not before this court at this stage of the proceedings.

brought to a hospital, and that during a large portion of his term of imprisonment he was in Dannemora.

"I find that his medical records give substantial indication that he was not capable himself of taking the necessary steps to protect his right to appeal in a timely way."

As it was clear that there is no record of the trial which would permit an effective appeal, and as the main witnesses are now deceased, it was determined that resentencing on that conviction would serve no useful purpose. The 1942 conviction was, therefore, set aside. In view of the fact that Diblin's 1959 sentence as a second felony offender was based on the sodomy conviction, that sentence was also set aside.[5] The district judge then ordered that:

"petitioner be discharged from the custody of the respondent unless, within thirty days from the date of service of this Order upon respondent, petitioner is resentenced in the Supreme Court of the State of New York, New York County for the crime of incest without reliance on the conviction for the crime of sodomy hereby set aside as the basis for resentencing petitioner as a multiple felony offender."

The Warden of Green Haven State Prison appeals from this order granting the writ of habeas corpus.[6] Finding no error in the proceedings below, we affirm, except for the increase in time allowed, as noted *infra*.

 The constitutional equal protection guarantee requires that when the state provides appellate review of criminal convictions, all persons must have the same opportunity to obtain such review. Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956);

Douglas v. California, 372 U.S. 453, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). As part of this requirement, the state may not deprive a defendant of notice that appellate review is available or hinder his attempts to secure that right. Dowd v. United States ex rel. Cook, 340 U.S. 206, 71 S.Ct. 262, 95 L.Ed. 215 (1951); United States ex rel. Smith v. McMann, 417 F.2d 648 (2 Cir. October 10, 1969). It is also clear that a convicted felon has the right to be represented by counsel at sentencing, see Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), McConnell v. Rhay, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968); and that under the circumstances of the present case, the denial of that right hindered Diblin's exercise of his right to appeal. Appellant argues, however, that the District Court's findings that Diblin was not represented by counsel and was denied his right to appeal were without basis in the evidence and therefore clearly erroneous.

 The primary witnesses at the habeas corpus hearing were Diblin himself and his 1942 trial counsel, Mr. John Cardone. Diblin's testimony was both confusing and contradictory; and the court below specifically stated that its findings were not based on this evidence. Mr. Cardone was 81 years of age and ill at the time of this hearing.[7] He had some difficulty recalling the events of 1942 in great detail, but was nevertheless quite emphatic when he stated that Diblin had been sentenced before he (Mr. Cardone) arrived in the courtroom and that he, therefore, had not represented Diblin at sentencing and had not seen or conversed with him afterwards. Appellant argues that Mr. Cardone's frailty and lack of clear memory dis-

---

5. Diblin petitioned at least one Federal Court to set aside his 1959 conviction, claiming that his guilty plea was induced by improper promises from the sentencing judge and prosecutor. That petition was denied. United States ex rel. Diblin v. Follette, 268 F.Supp. 674 (S.D.N.Y.1967). The present decision, of course, in no way impairs the validity of that judgment.

6. The appellant applied to this court for a stay of Judge Weinstein's order during the pendency of this appeal, and that application was granted on May 23, 1969.

7. Because of his advanced age and incapacitating illness, the court below found it necessary to journey to Mr. Cardone's residence in Queens to take his testimony.

credit any merit his testimony may have had. But this is a credibility determination specifically within the province of the district court and we will not disturb it on appeal. There was also ample documentary evidence to support the proposition that Diblin had not been advised of his right to appeal and that he was suffering from mental and emotional disturbances immediately after his incarceration. A thorough examination of the entire record discloses adequate bases for the conclusions reached by the district court; those findings were not "clearly erroneous" under any recognized application of that standard. See, e. g., Montgomery v. Goodyear Aircraft Corp., 392 F.2d 777, 782 (2 Cir. 1968); Hedger v. Reynolds, 216 F.2d 202, 203 (2 Cir. 1954).

Appellant's only other claim is that the district court's mandate should have been limited to ordering the State to resentence Diblin on the 1942 conviction. We disagree. The only purpose to be served by such an order would be to enable Diblin ultimately to obtain his appeal. But as has already been stated, the transcript from that trial has been destroyed and the primary witnesses are now deceased, so that it would be impossible to provide an effective appeal from that conviction. Under such circumstances a remand to the State court for resentencing on the 1942 conviction would be a useless gesture; the district court's disposition of the case was, therefore, correct. See Pate v. Holman, 341 F.2d 764, 777, modified on other grounds, 343 F.2d 546 (5 Cir. 1965); Mitchell v. North Carolina, 247 F.Supp. 139, 141 (E.D.N.C. 1964). As the practical consequence of voiding the 1942 conviction is to make that conviction an improper basis for a second-offender sentence, it is necessary to order Diblin's release unless he is resentenced for the 1959 incest conviction.[8] Cf. United States ex rel. Condon v. McMann, 417 F.2d 648 (2 Cir. October 17, 1969).

We express no opinion on whether it would be in accord with New York law for the State court to consider Diblin's prior federal felony conviction as ground for resentencing him as a second felony offender.

We therefore affirm the judgment below and find that the petitioner-appellee George Diblin must be discharged from State custody unless within 60 days he is resentenced for the 1959 conviction by the State court, without regard to the 1942 felony conviction for multiple-offender purposes, or unless the appropriate New York State Court holds that the sentencing of Diblin as a multiple-offender may be based upon the federal felony sentence imposed upon him in the Western District of Washington in 1946 and a judgment is entered accordingly. It is so ordered.

---

8. As Diblin has already served more than the maximum penalty for a first incest offender (see former N.Y.Penal Law § 1110), he must be released if there is no prior felony on which to base a multi-offender sentence under former N.Y.Penal Law § 1941.