**UNITED STATES of America ex rel. Raymond G. LASKY, Petitioner-Appellant,**

v.

**Hon. J. Edwin LaVALLEE, Superintendent, Clinton Correctional Facility, Dannemora, New York, Respondent-Appellee.**

No. 211, Docket 71–1841.

United States Court of Appeals, Second Circuit.

Argued Oct. 18, 1972.

Decided Jan. 19, 1973.

Robert Hermann, Robert Kasanof, The Legal Aid Society, New York City, for appellant.

John Proudfit, Iris A. Steel, Asst. Attys. Gen., Samuel A. Hirshowitz, First Asst. Atty. Gen., Louis J. Lefkowitz, Atty. Gen., State of New York, for appellee.

Before WATERMAN, SMITH and KAUFMAN, Circuit Judges.

WATERMAN, Circuit Judge:

This appeal is from a denial on June 9, 1971, without an evidentiary hearing, of a petition for a writ of habeas corpus filed by petitioner Lasky pro se on February 4, 1971 in the United States District Court for the Southern District of New York. On August 26, 1971 we granted petitioner's motion for a certificate of probable cause, for leave to proceed in forma pauperis, and for assignment of counsel. Upon a careful review of the entire record we are persuaded that petitioner's request for habeas corpus relief should be granted. Accordingly, we reverse the order below and order that petitioner be released from custody unless the State of New York shall resentence him within sixty days following the date our mandate is filed in the district court.

On September 9, 1965 a Dutchess County New York State grand jury indicted petitioner for the crimes of grand larceny in the first degree, burglary in the third degree, and conspiracy to commit burglary and larceny. After a jury trial he was found guilty on all the counts. On February 2, 1966, before petitioner was to be sentenced, the district attorney filed a fourth felony offender information under Section 1942 of the New York Penal Law of 1909 [1] McKinney's Consol.Laws c. 40 charging Lasky with having been convicted of four prior felonies.[2] At the hearing which followed,

1. New York Penal Law of 1909 has been superseded by New York Penal Law of 1965, effective September 1, 1967.

2. The four prior out of state felonies charged in the information are as follows:

(1) Burglary and larceny, Circuit Court of Pulaski County (Little Rock) Arkansas, April 4, 1960, three year sentence;

(2) Breaking and entering, Superior Court of Fairfield County (Bridgeport) Connecticut, November 14, 1958, one to three year prison term;

(3) Forgery, Superior Court of Fairfield County, February 9, 1956, one year sentence; and

(4) Forgery, in the Superior Court of Fairfield County on January 12, 1955, one year suspended sentence.

Under New York law the 1955 forgery offense which resulted in only a suspended sentence could not be used as a predicate offense in a fourth felony offender information. People ex rel. Jobissy v. Murphy, 244 App.Div. 834, 279 N.Y.S. 762 (3d Dept.), aff'd mem. 268 N.Y. 695, 198 N.E. 562 (1935), cert. denied, 298 U.S. 661, 56 S.Ct. 752, 80 L.Ed. 1386 (1936); People ex rel. Marcley v. Lawes, 254 N.Y. 249, 172 N.E. 487 (1930); People ex rel. La Placa v. Murphy, 252 App.Div. 827, 299 N.Y.S. 336 (3d Dept. 1937), aff'd mem. 277 N.Y. 581, 13 N.E.2d 779 (1938).

conducted by the sentencing judge, petitioner admitted he was the person who had been the subject of the prior convictions but he challenged the validity of all of them on constitutional grounds.[3] This appeal involves Lasky's claim that the 1960 Arkansas conviction (see footnote 2) could not be used as a predicate offense for the enhancement of sentence because it was obtained when he was without the assistance of counsel.[4] The sentencing judge then instructed Lasky that the burden was upon him to prove that the Arkansas conviction was void, and the hearing was adjourned until February 23, 1966.

When the hearing resumed Lasky took the stand. He testified that, indeed, he pleaded guilty to the Arkansas charges. However, he stated that he did not have the assistance of counsel there; and, of course, an affirmative waiver of assistance cannot be presumed. Lasky stated that he remembered telephoning a local attorney from the county jail following his Arkansas arrest but that he was unable to raise the money for the attorney's fee.[5] He also testified that he talked to somebody at court who instructed him to plead guilty but that he did not know whether that man was a lawyer. When asked if he had heard of a man named Harry Robinson he answered: "I don't recall it. I might have heard of him." When asked whether Harry Robinson was appointed to defend him he answered: "I have been thinking of it. I don't have any recollection."

After Lasky testified the state introduced a certified copy of the Arkansas conviction and it has been examined by us. The document discloses that on April 4, 1960 Lasky pleaded guilty and that he appeared "in proper person"—a phrase historically meaning "by himself." Quite significantly, in view of the inclusion of this phrase, the document is silent as to whether Lasky was represented by counsel. Apparently the State also introduced a second Arkansas document, labeled a Penitentiary Commitment, which contained the "transcript" of the judgment of conviction for lodgment with the prison authorities. This document also recites that Lasky appeared before the court "in proper person" but even more significantly the printed words "by his attorney" which are part of the printed form on the face of this commitment document had been crossed out by typewriter typing.

At this point the trial judge again adjourned the hearing so as to enable the State to search out additional evidence. The hearing was resumed on March 2, 1966 and the district attorney appears to have placed into evidence a "record of a hearing" which he allegedly had received from the clerk of the Arkansas court, "showing that the defendant was represented by counsel, Mr. Harry Robinson." This statement identifying a "record of a hearing" is referred to in the stenographic minutes of the Dutchess County Court proceedings. However, that record is not before us.[6] Petitioner suggests

3. Apparently the challenges to the Connecticut convictions later were discontinued, leaving only a challenge to the Arkansas conviction.

4. A prior conviction cannot be used by a state in order to enhance punishment under a recidivist statute unless that conviction was obtained in a constitutional manner. See, e. g., Burgett v. State of Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed. 2d 319 (1967); U. S. ex rel. Easterling v. Wilkins, 303 F.2d 883 (2 Cir. 1962); U. S. ex rel. Sileo v. Martin, 269 F.2d 586 (2 Cir. 1959); U. S. ex rel. Savini v. Jackson, 250 F.2d 349 (2 Cir. 1958).

5. The testimony of the hearings of February 2, February 23, and March 2 was taken down by a court reporter and these stenographic minutes were submitted to the district court below and have been submitted to us. The factual background described in the text is based on the submitted minutes. Although in his brief counsel for Lasky challenges the accuracy of some portions of the minutes he does not dispute the accuracy of the transcription of Lasky's own testimony.

6. Neither the district judge below nor defense counsel have been able to secure or locate this "record," whatever it is or

that this so-called "record" is only the docket sheet which the district attorney furnished the trial judge that same day and which we now have before us. We find reasonable and are inclined to accept petitioner's representation that a separate document never existed. Such a document, bearing so directly upon the length of time the prisoner would be deprived of his freedom, if, in fact, some other document than the docket sheet, would surely have been marked as a People's Exhibit and would have been carefully preserved by the State. In any event, the Arkansas court's docket sheet introduced by the State contained two handwritten entries, one dated March 7, and one dated April 4. The March 7 entry stated that Lasky and his codefendant, one Davis, pleaded not guilty and that "Harry Robinson was appointed to defend." It does not state that Harry Robinson was appointed to defend Lasky or that he ever appeared on Lasky's behalf. The April 4 entry stated that Lasky pleaded guilty to the charges and there is no indication whatever that an attorney was present at the time of the plea. In any event, at the conclusion of these twice adjourned hearings the New York state trial judge found Lasky to be a fourth felony offender and sentenced him to prison for the mandatory term of fifteen years to life, a term Lasky is presently serving in the Clinton Correctional Facility in Dannemora, Clinton County, New York.

 The issue presented by this appeal is whether the credible evidence at the State's sentencing proceedings was sufficient to support the judge's finding that Lasky had counsel when he pleaded guilty in Arkansas.[7] If Lasky was not represented by counsel New York State cannot use the conviction for the purpose of enhancing Lasky's sentence. See, *e. g.*, Burgett v. State of Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L. Ed.2d 319 (1967).

 The State argues that the record contains ample evidence to support the findings of the federal judge below and that this court is bound by the "clearly erroneous" standard of review. We cannot agree. Customarily when this court reviews the factual findings of the lower court the "clearly erroneous rule" applies (Rule 52(a) Fed.R. Civ.P.), but in this case, where the factual findings of the district judge are made solely on the basis of an interpretation of documentary records, and the credibility of witnesses is not in issue, we may make our own independent factual determination. See, *e. g.*, Orvis v. Higgins, 180 F.2d 537, 538 (2 Cir. 1950), cert. denied, 340 U.S. 810, 71 S. Ct. 37, 95 L.Ed. 595 (1950); Luckenbach S. S. Co. v. U. S., 157 F.2d 250, 251 (2 Cir. 1946); Kind v. Clark, 161 F.2d 36, 46 (2 Cir. 1947), cert. denied, 332 U.S. 808, 68 S.Ct. 107, 92 L.Ed. 385 (1947); Moore, Federal Practice, § 52.-04 at 2683 (2 ed. 1971). Also, inasmuch as this is a habeas corpus proceeding, the federal courts, both trial and appellate, must also determine what weight should properly be given to all relevant

---

whatever it was represented to be, and the State has been unable to introduce a copy of it into evidence. Moreover, neither the present District Attorney nor the Public Defender of Dutchess County has ever heard of the "document" and there is no record of it in their files. There seems to be serious question whether such a separate "document record of an Arkansas hearing" other than the docket record ever existed.

7. Lasky has clearly exhausted his state court remedies on the issue. By a 5-2 decision, Chief Judge Fuld and Judge Burke dissenting, the New York Court of Appeals affirmed the New York conviction as a fourth felony conviction. A majority of the highest New York court concluded that the burden of proving non-representation was properly placed upon the defendant and held that "on balancing the evidence brought forth by both the prosecution and the defense at the hearing, we can only conclude that the defendant failed to carry his burden of proof as required by law." People v. Lasky, 31 N.Y.2d 146, 335 N.Y.S.2d 266, 268, 286 N.E.2d 712 (1972). In dissent, Judge Fuld said that in his view "the appellant was not represented by counsel in Arkansas at the time of his conviction on April 4, 1960—unquestionably the most critical stage of the proceeding."

factual determinations of the New York state court whose judgment is challenged by the habeas. Under 28 U.S.C. § 2254 a state court's factual determination shall be presumed to be correct if it is "evidenced by a written finding, written opinion, or other reliable and adequate written indicia." We have before us the stenographic minutes of the Dutchess County Court proceeding and the contents of such stenographic minutes might ordinarily qualify as reliable indicia to support the factual findings of the state court. However, in this case where reference is made in the minutes to the important "record" document of the Arkansas hearing and such a document, separate from the docket record, cannot be found, the reliability of the minutes is cast into doubt. Moreover, if one restrained of his liberty by state action claims the restraint arises from the deprivation of his federal constitutional rights and the state court's contrary factual determinations rest on a pertinent part of the record which the state cannot provide, the federal court is statutorily authorized to disregard the state court findings and substitute its own. 28 U.S.C. § 2254(e). In this case the missing "record" of the Arkansas proceeding though searched for by the federal district court, by defense counsel, and presumably earlier by the state officers, remains missing. Moreover, petitioner argues with compelling force that the document referred to is really the Arkansas docket record, a record which is not missing. In view of the ambiguity of the stenographic minutes and the likelihood that the "record" referred to may well be the docket record, we conclude that we should disregard the findings of the state court and accordingly proceed to adjudicate the issues before us upon the evidence before us.

Once petitioner Lasky challenged the constitutionality of his Arkansas conviction the State had the burden of going forward with sufficient evidence to rebut Lasky's allegation that he was denied counsel. United States ex rel. Savini v. Jackson, 250 F.2d 349 (2 Cir. 1957); U.S. ex rel. Easterling v. Wilkins, 303 F.2d 883 (2 Cir. 1962). The State introduced: (1) the certified copy of the judgment which states that Lasky came "in proper person"; (2) the Penitentiary Commitment from which the words "by his attorney" are crossed out by a typewriter; (3) the March 7 docket entry which states as to two defendants than an Arkansas attorney, one Harry Robinson, "was appointed to defend"; and (4) the April 4 docket entry which makes no mention whatever of counsel being present at the time of Lasky's guilty plea. On the basis of this documentary record we do not find any credible evidence affirmatively indicating that Lasky was represented by counsel at any critical stage of the Arkansas proceedings, and we find that New York State has not sustained its burden of going forward.[8] Although Lasky did not testify unequivocally that he was not represented by an attorney, the totality of his testimony leaves the clear impression that he doesn't remember being represented by counsel and that he doesn't believe he was represented. Moreover, the conviction document, silent when docket regularity would require that a counsel's appearance be noted, raises the presumption that Lasky did not have counsel. Burgett v. State of Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967); see Oswald v. Crouse, 420 F.2d 373 (10 Cir. 1969); Loper v. Beto, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972).

None of the additional evidence presented by the State is sufficient to

8. Petitioner claims that the burden of proof, i. e., the risk of non-persuasion, was on the State as a matter of constitutional law, and that the state trial judge was in error in instructing Lasky that the burden was on him. Although there is some authority for this proposi-

tion, see United States v. Lufman, 457 F.2d 165, 166–167 n. 2 (7 Cir. 1972); Woods v. United States, 457 F.2d 185 (7 Cir. 1972), we find no need, in the light of our above holding, to address ourselves directly to this issue.

rebut this presumption. The ambiguous phrase of the March 7 docket entry that Harry Robinson was "appointed to defend" is too imprecise to constitute evidence one way or another, see Harris v. Boles, 349 F.2d 607 (4 Cir. 1965).[9] The excision of the words "by his attorney" on the Penitentiary Commitment tends to indicate that, when convicted, Lasky was not represented by counsel.[10] Inasmuch as the missing "record" of the Arkansas hearing is not before us and quite possibly is the docket record, we cannot assign independent evidentiary weight to that. On balance, therefore, it appears that there is, on the one hand, credible evidence indicating that Lasky did not have counsel, and, on the other hand, little or no probative evidence that he did have. Accordingly, we cannot permit the Arkansas conviction to be used by New York for the purposes of enhancement of sentence. As stated by Justice Douglas in Burgett v. Texas, *supra*: "To permit a conviction obtained in violation of Gideon v. Wainwright to be used against a person either to support guilt or enhance punishment for another offense (see Greer v. Beto, 384 U.S. 269, 86 S.Ct. 1477, 16 L.Ed.2d 526 (1966) ) is to erode the principle of that case. Worse yet, since the defect in the prior conviction was denial of the right to counsel, the accused in effect suffers anew from the deprivation of that Sixth Amendment right." 389 U.S. at 115, 88 S.Ct. at 262.

In view of the foregoing it is apparent that nothing would be gained by a remand to the district court with instructions to conduct an evidentiary hearing on petitioner's claim. There is no evidence which could be submitted to the district court which has not already been before us. We therefore reverse

the judgment below and order that petitioner-appellant Lasky be discharged from state custody unless within 60 days he is resentenced by the state court without the use of the 1960 Arkansas conviction to enhance the punishment given him for the New York crimes. See United States ex rel. Diblin v. Follette, 418 F.2d 408, 411 (2 Cir. 1969).

---

9. See also dissenting opinion of Chief Judge Fuld of the New York Court of Appeals, 31 N.Y.2d 146, 335 N.Y.S.2d 266, 270, 286 N.E.2d 712 (July 6, 1972).

10. The State suggests that the only reason the words "by his attorney" were "xed" out of the Penitentiary Commitment form was to conform it to the certified conviction document which did not contain the phrase. However, it seems even more plausible that if Lasky had had counsel during the court proceedings the clerk of the Arkansas court would have added the phrase "by his attorney" to the conviction document, thereby eliminating any need to excise the phrase from the printed Penitentiary Commitment form.