William M. DEAN, Petitioner,

v.

STATE OF NORTH CAROLINA, Respondent.

No. C–41–G–66.

United States District Court M. D. North Carolina, Greensboro Division.

June 27, 1967.

Kenneth L. Penegar, Chapel Hill, N. C., Court-Appointed Counsel for petitioner.

Thomas Wade Bruton, Atty. Gen. of North Carolina, and Theodore C. Brown, Jr., Staff Atty., Raleigh, N. C., for respondent.

## MEMORANDUM OPINION

EDWIN M. STANLEY, Chief Judge.

The petitioner, William M. Dean, a State court prisoner, has filed in this court a *pro se* petition for a writ of habeas corpus. The petition was accompanied by an affidavit of poverty, and the Clerk was directed to file same without the prepayment of fees or costs, or security therefor. It is conceded that petitioner, before filing his petition in this court, exhausted all remedies available to him in the courts of the State.

Following the filing of the petition, an order was entered entertaining the petition and directing the respondent to file answer, together with copies of all pertinent State court records and transcripts. After the answer, record and transcripts were filed, it was determined that petitioner was entitled to a plenary hearing on his constitutional claims, and that an attorney should be appointed to represent him. Accordingly, an order was entered appointing Kenneth L. Penegar, Esquire, of Chapel Hill, North Carolina, to represent petitioner in the proceeding. After Mr. Penegar conferred with petitioner and examined pertinent records and transcripts filed with this court, including the *pro se* petition filed by petitioner, a motion was made for leave to file an amended petition, which was granted. The respondent thereafter timely filed an answer to the amended petition, which was later amended to affirmatively assert the defense of laches. A full plenary hearing was conducted on February 27, 1967. At the conclusion of the hearing, counsel requested, and were granted, leave to file requests for findings and briefs, and present oral arguments. The matter is now before the Court for decision.

The certified State court records disclose that petitioner and others were arrested the latter part of January, 1946, in Caldwell County, North Carolina, on a series of safecracking and larceny charges. When the cases were considered by the grand jury at the February, 1946, term of Superior Court of Caldwell County, petitioner was charged in three separate bills of indictment. In one case, petitioner, Harold Carlton and Carl McKnight were jointly charged with burglarizing the United States Post Office at Kings Creek, North Carolina, on

November 30, 1945. In another case, petitioner and Harold Carlton were jointly charged with burglarizing R. J. Setzer's store on November 22, 1945. In the third case, petitioner, Harold Carlton, and Edna Green were jointly charged with burglarizing the Main Theatre in Granite Falls on November 9, 1945. In each indictment, the defendants were charged, in the commission of the burglary, with the opening of a vault, safe or other secure place by the use of nitro-glycerin, dynamite or other explosives.

Within a day or two after his arrest in January of 1946, petitioner, through the assistance of his wife, employed G. W. Klutz and Max C. Wilson, two able and experienced attorneys, to represent petitioner. On February 26, 1946, the case in which petitioner, Harold Carlton and Carl McKnight were charged with burglarizing the Post Office at Kings Creek, North Carolina, was called for trial. The petitioner and Carl McKnight entered pleas of not guilty. Harold Carlton entered a plea of guilty, and testified as a witness for the State. At the end of the State's evidence, petitioner, through counsel, withdrew his plea of not guilty and entered a plea of guilty. McKnight was convicted by the jury. Petitioner subsequently entered a plea of guilty in the other two cases. In each case, he was sentenced to imprisonment for not less than thirty-five nor more than forty-five years, the sentences to run concurrently. Upon direct appeal to the North Carolina Supreme Court, McKnight's conviction was affirmed. State v. Mc-Knight, 226 N.C. 766, 40 S.E.2d 419 (1946). Petitioner escaped in 1959, and after serving a prison sentence in Florida, was returned to the custody of the North Carolina authorities on October 23, 1963. His first motion for post-conviction relief was filed in the sentencing court in 1964. Following a full plenary hearing, at which numerous witnesses testified, the sentencing court, on September 30, 1965, entered a lengthy order, which contains findings of fact and conclusions of law, denying relief. After the North Carolina Supreme Court

denied a petition for a writ of certiorari, the petition for writ of habeas corpus was filed in this court. Since the State court post-conviction proceeding undoubtedly met the standards prescribed by Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), and 28 U.S.C. § 2244, as amended, this Court would have been justified in refusing to entertain the petition for a writ of habeas corpus. Nevertheless, out of an abundance of fairness to the petitioner, his petition was entertained and he was afforded another full plenary hearing.

In his amended petition, petitioner alleges that he was abandoning all claims for habeas corpus relief, except the following:

1. He was coerced into changing his plea from not guilty to guilty in the case in which he was being tried, and the trial judge failed to make adequate inquiry as to the voluntariness of his changed plea.

2. He was denied effective representation by counsel by reason of the fact that he was moved several times from jail to jail between the date of his arrest to the date of his trial, thus making it difficult for his attorneys and relatives to locate him during this critical pre-trial stage.

3. The sentence imposed was impermissible punishment in that the statute under which he was indicted and sentenced affords the sentencing judge too much discretion, and hence creates a delegation of legislative competence to the judiciary. In the alternative, it is claimed that the statute under which the indictment was drawn is void for vagueness.

At the outset, it should be observed that the lapse of time of more than twenty years from the date of trial until the hearing in this court makes it extremely difficult, if not impossible, for the witnesses, including petitioner, to recollect, with any degree of certainty, exactly what transpired at the trial. This problem is compounded by the fact that Mr. Klutz, one of petitioner's attorneys,

and the court recorder are deceased. The trial judge retired several years ago due to age. The most complete record of what transpired in the trial is the transcript and other records filed in the North Carolina Supreme Court in connection with the direct appeal of Carl McKnight.

■ Considering the last claim first, there is clearly no merit to the contentions that the sentence imposed was impermissible or that the statute under which the indictment was drawn is void for vagueness. The petitioner was charged under Section 14–57, General Statutes of North Carolina, which makes it unlawful for a person, with intent to commit crime, to break· and enter a building and open or attempt to open, "any vault, safe, or other secure place by use of nitro-glycerine, dynamite, gunpowder, or any other explosive, or acetylene torch * * *." There is certainly nothing vague or indefinite about this statute. Punishment prescribed for the violation of the statute is as for burglary in the second degree. Under Section 15–52, General Statutes of North Carolina, burglary in the second degree is punishable by "imprisonmont in the state's prison for life, or for a term of years, in the discretion of the court." Petitioner's co-defendant, Carl McKnight, made a similar, but unsuccessful, attack upon his sentence of not less than twenty-five nor more than thirty-five years. In re McKnight, 229 N.C. 303, 49 S.E.2d 753.

■■ The claim that petitioner was denied effective assistance of counsel must also be rejected. It is true that petitioner was detained in jails in adjoining counties for a period of time between the date of his arrest and trial, but there is no credible evidence to establish that this in any way hampered his defense. The reason for removing petitioner from Caldwell County jail was that Harold Carlton, one of his co-defendants, had confessed and agreed to testify for the State, and the local law enforcement officers were fearful of serious trouble if petitioner and Carlton were both left in the same jail. Petitioner had employed and conferred with his attorneys before he was removed from Caldwell County jail to an adjoining county, and his attorneys were free at all times to confer with him. Both attorneys were highly competent and experienced in the trial of criminal matters. It is concluded that petitioner was in no way prejudiced by being moved from the Caldwell County jail to jails in adjoining counties for a period of time between the date of his arrest and the date of his trial, and that his place of detention in no way denied him of effective representation by counsel. In any event, if any prejudice did result in his detention outside of Caldwell County, the error was harmless by reason of petitioner's voluntary plea of guilty. Vanater v. Boles, Warden of the West Virginia State Penitentiary, 4 Cir., 377 F.2d 898 (1967).

■ The final claim is that petitioner was coerced into changing his plea from not guilty to guilty. The fact that the trial judge failed to make adequate inquiry as to the voluntariness of the changed plea is of no moment. The crucial question is whether the changed plea was freely and voluntarily entered. Aiken v. United States, 4 Cir., 282 F.2d 215 (1960); and Gundlach v. United States, 4 Cir., 262 F.2d 72; cert. den. 360 U.S. 904, 79 S.Ct. 1283, 3 L.Ed.2d 1255 (1958). With reference to the changed plea being coerced, petitioner alleges that this came about by reason of (1) the presence of evidence in the courtroom relating to charges not being tried, (2) the arrest, detention and subsequent release of his wife under conditions suggesting a "deal," and (3) the adverse comment of the Trial Judge as to likely perjury charges being placed against defense witnesses should petitioner be found guilty.

■ Petitioner testified that there were some articles of cluthing and a safe in the courtroom during the trial, which had been seized in connection with another crime in another county. Some of

the officers testified that they only remembered seeing a leather jacket, and possibly a few other items of clothing, in the courtroom, but believed that they had been brought there in connection with one of the pending charges against petitioner. Other witnesses remembered seeing nothing in the courtroom. In any event, no witness, including petitioner, testified that the attention of the jury, or anyone else, was called to the presence of any such articles as might have been in the courtroom, and no one has attempted to explain how petitioner was, or even could have been, prejudiced by the presence of such articles. The transcript in the McKnight case makes no reference to any article which was not received in evidence. On the entire record, the Court finds that the petitioner has failed to prove by any credible evidence that he was in any way prejudiced, even in the slightest, by any articles of merchandise, or other exhibits, as might have been present in the courtroom during the trial, or that the presence of any such articles in any way influenced him to change his plea from not guilty to guilty.

█ Petitioner's wife was under indictment from complicity in another crime. Petitioner testified that his lawyers told him during the progress of the trial that if he did not change his plea to guilty he would likely be convicted and receive a life sentence, and that it was also likely his wife would receive a lengthy sentence in the case in which she was indicted, but that if he changed his plea to guilty he would not receive a life sentence and the charges against his wife would be dismissed. It is claimed that these representations were coercive, and were a deciding factor in his changed plea. There is no hint or suggestion that any such representations, if made, were the result of any statement or promise made by the court, court officials, or law enforcement officers. As earlier noted, Mr. Klutz, one of petitioner's attorneys, is deceased. Mr. Wilson testified that his own recollection about the change of the plea was that after Harold Carlton had testified he felt the evidence against the petitioner was overwhelming and that it was his professional opinion that petitioner's interest would best be served by changing his plea and placing himself on the mercy of the court. Mr. Wilson was positive that no promises were made to him by the judge or solicitor, and that he made no promises to the petitioner, to coerce or influence the changed plea. While Mr. Wilson remembers nothing about the case against petitioner's wife, it is a matter of record that the charges against her were later nol prossed. It is also a matter of record that petitioner did not receive a life sentence. Thus, the attorneys, even according to petitioner's testimony, accomplished what they sought to accomplish by reason of the changed plea. In any event, the Court knows of no reason why these and other matters of strategy were not legitimate subjects for discussion with petitioner. Actually, petitioner does not allege that any court official, or even his attorneys, made any promises to him, only that the circumstances surrounding his wife's case *suggested* a "deal". It is concluded that the contention is without substance or merit.

█ The petitioner has totally failed to sustain his allegation that he was coerced into changing his plea to guilty by reason of adverse comments of the Presiding Judge as to likely perjury charges being placed against defense witnesses if the petitioner should be found guilty. Petitioner testified that such comments were made in open court before the jury before he changed his plea. While it is true that some of the witnesses who testified on behalf of McKnight were later indicted for perjury, the credible evidence establishes that nothing was said about possible perjury charges against defense witnesses until the jury had returned its verdict against McKnight. It should be borne in mind that petitioner changed his plea at the conclusion of the State's evidence, and before either he or McKnight had offered any defense witnesses. The transcript in the McKnight case makes no reference to any such statement having been made by the Judge at any time during the

progress of the trial. Mr. Wilson remembers nothing being said by the Judge with respect to possible perjury charges against defense witnesses. Stanley Crisp, who was Chief of Police of Lenoir, North Carolina, at the time of the trial, remembers only that the Judge made some statement about perjury charges against defense witnesses after petitioner had changed his plea to guilty and after defense witnesses had testified. Claude E. Goble, Chief Deputy Sheriff of Caldwell County at the time of the trial, remembers that the Judge, after the jury had returned its verdict of guilty against McKnight, instructed the solicitor to present bills of indictment to the grand jury charging some of McKnight's witnesses with perjury. On the basis of all the evidence, it is found that any statements made by the Presiding Judge concerning possible perjury indictments against defense witnesses were made long after petitioner had changed his plea to guilty, and, consequently, had no bearing whatever upon his decision to change his plea.

■ After considering the State court records and transcripts received in evidence, and the testimony of all the witnesses, and giving due consideration to all the facts and circumstances in evidence, including the credibility of witnesses and evidentiary conflicts, the Court finds and concludes that petitioner has failed to sustain his burden of proving by a preponderance of the evidence that his plea of guilty was not freely, voluntarily, understandingly, and intelligently made, or that his changed plea was in any way coerced or improperly induced by his attorneys, the court, or anyone else. This being true, all prior errors and irregularities in the proceeding, if any, were "swallowed up in the guilty plea and waived." Vanater v. Boles, Warden of the West Virginia State Penitentiary, 4 Cir., 377 F.2d 898 (1967).

■ While the merits of petitioner's claims have been resolved against him, this is a classic case for application of the equitable doctrine of laches. The petitioner waited almost eighteen years before presenting his constitutional claims to any court, and almost twenty years before presenting them to this court. His only excuse for the delay is that he did not learn until 1963, following the *Gideon* decision (Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799), that a state court prisoner could apply to Federal court for post-conviction relief. There was no attempt to explain why post-conviction relief had not earlier been sought in the State courts. As previously noted, witnesses have become unavailable and recollections have dimmed. One of petitioner's attorneys has died. Even the petitioner admits his inability to recollect the details of his trial. The inordinate delay has made a retrial exceedingly difficult, if not impossible. Mathis v. United States, 4 Cir., 369 F.2d 43 (1966). While it is generally held that the doctrine of laches is not an absolute bar to the prosecution of a claim for post-conviction relief, it has been recognized that the lapse of time affects the quantum of required proof as well as the good faith and credibility of the moving party. Heflin v. United States, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959). In Giddens v. Isbrandtsen Co., 4 Cir., 355 F.2d 125, 127 (1966), the doctrine of laches is explained as follows:

"Laches is sustainable only on proof of both of two elements: '(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense'. Costello v. United States, 365 U.S. 265, 282, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961). The latter contemplates the dispersal and inaccessibility of witnesses, the dimming recollections and other disadvantages incident to the lapse of time. Thus the presence of laches is ascertained by a balancing of the claimant's delay with the proffered excuse, if any, against the defendant's consequent detriment. The determination demands a weighing

of equities. These in turn depend upon an assay of the circumstances."

While it is important that one convicted of crime in violation of constitutional principles should be accorded relief, it is equally important that reasonable diligence be required to the end that convictions may some day be at an end. A convicted person should not be permitted to allow years to pass during which witnesses die, disappear or forget, and his own imagination grows and expands, before bringing constitutional claims to the attention of the court. States have a right to assume that transactions are closed and settled within a reasonable time, and to rely upon the finality of judgments. Bowen v. United States, 5 Cir., 192 F.2d 515 (1951); and United States v. Wiggins, 184 F.Supp. 673, 676 (D.C.1960). Also see ABA Project on Minimum Standards for Criminal Justice—Standards Relating to Post-Conviction Remedies, § 2.4, Page 48 (tentative draft).

For the reasons stated, an order will be entered denying habeas corpus relief.

This Memorandum Opinion constitutes findings of fact and conclusions of law.