Johnny HONEYCUTT,
Petitioner-Appellee,

v.

Benjamin WARD, Commissioner of Corrections for the State of New York, Respondent-Appellant.

No. 1149, Docket 79–2050.

United States Court of Appeals, Second Circuit.

Argued May 31, 1979.

Decided Nov. 5, 1979.

Michael G. Berger, New York City (Pryor, Cashman, Sherman & Flynn, New York City, of counsel), for petitioner-appellee.

Paul E. Dahlman, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen. of N. Y., George D. Zuckerman, Asst. Sol. Gen., Arlene R. Silverman, Asst. Atty. Gen., New York City, of counsel), for respondent-appellant.

Before MOORE, FRIENDLY and FEINBERG, Circuit Judges.

MOORE, Circuit Judge:

This is an appeal by the Commissioner of Corrections for the State of New York (hereinafter the "State"), from a judgment of the United States District Court for the Southern District of New York, granting appellee Johnny Honeycutt's petition for a writ of habeas corpus, 28 U.S.C. § 2254.

The petition was granted on the theory that a sentence imposed after a 1954 conviction in New York County, upon a plea of guilty to armed robbery in the second degree, was unlawfully enhanced to fifteen years to life imprisonment as a result of a fourth felony information filed pursuant to former New York Penal Law § 1942 and § 1943. The petitioner admitted that he was the same person who had been convicted of the three felonies specified in the information. All three of the prior felony convictions were out-of-state convictions. The basis of Honeycutt's habeas corpus petition, made on May 16, 1978, is, according to his court-appointed attorney, that a 1949 Oklahoma conviction, a necessary predicate to Honeycutt's fourth offender sentence, was obtained in alleged violation of Honeycutt's constitutional right to counsel.

In 1926 the Legislature of the State of New York enacted New York Penal Law § 1942, reading in pertinent part as follows:

"§ 1942. Punishment for fourth conviction of felony. A person who, after having been three times convicted within this state of felonies or attempts to commit felonies, or under the law of any other state, government or country, of crimes which if committed within this state would be felonious, commits a felony, within this state, shall be sentenced upon conviction of such fourth, or subsequent, offense to imprisonment in a state prison for the term of his natural life. . . ."

The purposes of the statute were to deter potential recidivists by making the risks too great and to protect the citizens of New York State from persons whose records had shown them to be frequently addicted to crime. Since the State-Federal judicial relationship often presents delicate issues and Federal courts should be reluctant to use their power to override the decisions of State courts rendered after affording due process, the record before us as the basis for any decision assumes more than ordinary importance.

The record discloses that the petitioner at the age of 13 was imprisoned for some offense the nature of which is not revealed. In 1949, petitioner pleaded guilty in Oklahoma to robbing a grocery store "because I [petitioner] was guilty". A two-year sentence resulted. In 1951, in Oklahoma, petitioner was convicted and sentenced to eighteen months imprisonment for passing a government obligation with a forged endorsement. In 1952, in California, petitioner was convicted upon a jury verdict of forgery and sentenced to one year. In the New York County Court of General Sessions on March 15, 1954, petitioner pleaded guilty to the charge of armed robbery in the second degree, after admitting to the sentencing judge that he had possessed the gun used in the robbery and that one shot had been fired. On August 11, 1954, petitioner was sentenced for this crime as a fourth felony offender to 15 years to life, pursuant to then effective New York Penal Law § 1942. Petitioner was represented by counsel both on plea and on sentence.

However, only some 13 years of this sentence were served because in 1967 petitioner was released on parole. In 1971, while on parole from his 1954 conviction, petitioner was indicted for murder and pleaded guilty to manslaughter, first degree, for which he served a five-year sentence. In 1976 petitioner was again paroled on his 1954 sentence. However, in the same year, he was convicted of attempted possession of a forged instrument, the sentence being 1½ to 3 years. That sentence has been fully served, and Honeycutt remains incarcerated solely by virtue of the 1954 sentence.[1]

After bringing several *pro se* petitions in the New York courts, Honeycutt challenged the use of the Oklahoma conviction as a predicate felony in a *coram nobis* application, which was denied by the Supreme Court, New York County, on March 3, 1976. On August 5, 1976, leave to appeal was denied by the Appellate Division, First Department, as was leave to appeal from the Appellate Division's ruling on September 23, 1976, by the New York Court of Ap-

---

1. The parties have stipulated that the 1971 and 1976 convictions are not at issue in this appeal.

peals. Subsequently, Honeycutt commenced the instant habeas corpus proceeding, claiming that the most ancient of his convictions—the 1949 Oklahoma conviction—was obtained in violation of his Sixth Amendment right to counsel and that, therefore, he should not have been sentenced as a fourth felony offender in 1954.

## THE HEARING BEFORE THE TRIAL COURT

The trial court held evidentiary hearings on January 17, February 16 and March 9, 1979, on petitioner's § 2254 petition. Petitioner testified in his own behalf as to the events of thirty years ago. He said that the Oklahoma judge in 1949 never said anything about his right to have a lawyer and "never mentioned a lawyer to me". Petitioner, however, did admit on cross-examination that he had said in an affidavit that "Although I may have been advised of my right to counsel, I do not recall waiving my rights".

For the hearings, both counsel tried to obtain such records, if any, as might be in Oklahoma. A court record from Oklahoma was secured and introduced which reveals certain facts with respect to the 1949 conviction under attack. In refutation of petitioner's 1979 memory of the 1949 courtroom scene a court order appointing counsel shows that:

"Now on this 10th day of June, 1949, it appearing to the undersigned Judge of the District Court of Oklahoma County, that: The above named defendant appeared for arraignment without aid of counsel and was informed by the Judge that said defendant was and is entitled to

counsel as a matter of right; that said defendant has advised the Court that defendant desires counsel but was and is unable to employ such aid.

It is therefore ordered that Chas. W. Moss, Public Defender of Oklahoma County, represent said defendant in the above styled cause until further order of the Court."

It is significant that the order is signed in long hand by A. P. Van Meter, District Judge, and there is no claim that the signature is a forgery. The order states facts which could only have resulted from the personal appearance of petitioner before the judge. The judge noted that petitioner appeared "without aid of counsel".[2] Petitioner was "informed by the Judge that said defendant [petitioner] was and is entitled to counsel as a matter of right"; and that "defendant [petitioner] has advised the Court that defendant desires counsel but was and is unable to employ such aid". Thereupon the judge appointed the Public Defender of Oklahoma County to represent petitioner until further order. Petitioner pleaded guilty on June 10, 1949 because, as he said, he "was guilty" and on the same day a judgment of conviction and sentence was signed by the judge.

## THE OPINION BELOW

The trial court, without making specific findings, merely said "On all the papers now before me and on all the evidence presented at the hearings I have held, I find that petitioner was not represented by counsel when he pleaded guilty and was sentenced in Oklahoma County, Oklahoma on June 10, 1949". He, therefore, concluded

---

**2.** Since at least 1931, the Oklahoma Constitution has required the appointment of counsel to represent indigents:

"[U]nder the Constitution of Oklahoma the defendant is entitled to have counsel appointed by the court, provided he is unable to pay for the same. Section 2929, O.S.1931 (22 Okl.St.Ann. § 464), reads as follows:
'If the defendant appear for arraignment, without counsel, he must be informed by the court that it is his right to have counsel before being arraigned, and must be asked if he desire the aid of counsel. If he desires,

and is unable to employ counsel, the court must assign counsel to defend him'." *Richardson v. State*, 61 Okl.Cr. 278, 67 P.2d 804, 805 (1937).
Moreover, before *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) was decided, Oklahoma state courts construed *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), as requiring appointment of counsel under the federal constitution. *See*, e. g., *Ex parte Cornell*, 87 Okl.Cr. 2, 193 P.2d 904 (1948); *Ex parte Barnett*, 67 Okl.Cr. 300, 94 P.2d 18 (1939).

that the use of that conviction as a predicate for sentencing petitioner as a fourth felony offender in New York, was "constitutionally impermissible" citing *Burgett v. Texas*, 389 U.S. 109, 114–15, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967).

In brief, the trial judge based his finding of non-representation upon the denial of representation by the petitioner, whose credibility was seriously affected by his earlier violations of his parole commitments and by his immediate return to his criminal activities. In contrast the district judge must have impliedly concluded that the Oklahoma judge put his name to a series of events which he stated had occurred in his presence but which were wholly false. The fact that the Public Defender's name had been pre-printed in the Oklahoma order appointing counsel is not of any moment. The name of the Public Defender would not change from case to case and the appointment of a Public Defender probably would have been not an infrequent occurrence. Nor is the fact that judgment and sentence were the same day of any significance. Petitioner knew he was guilty and said so. Further time for investigation of the law and facts was not required. Additional time for conferences would not have changed petitioner's confessed guilt.

Although Rule 52(a) of the Rules of Civil Procedure provides, in part, that in actions tried without a jury: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses" [derived from equity practice], the Supreme Court in *United States v. Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948) held:

> "The findings were never conclusive, however. A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* at 395, 68 S.Ct. at 542. (footnote omitted).

A most detailed and helpful explication of Rule 52(a) in this Circuit is that of the late Judge Frank:

> "Where a trial judge sits without a jury, the rule varies with the character of the evidence: (a) If he decides a fact issue on written evidence alone, we are as able as he to determine credibility, and so we may disregard his finding. (b) Where the evidence is partly oral and the balance is written or deals with undisputed facts, then we ignore the trial judge's finding and substitute our own, (1) if the written evidence or some undisputed fact renders the credibility of the oral testimony extremely doubtful, or (2) if the trial judge's finding must rest exclusively on the written evidence or the undisputed facts, so that his evaluation of credibility has no significance. (c) But where the evidence supporting his finding as to any fact issue is entirely oral testimony, we may disturb that finding only in the most unusual circumstances." *Orvis v. Higgins*, 180 F.2d 537, 539–40 (2d Cir.) *cert. denied*, 340 U.S. 810, 71 S.Ct. 37, 95 L.Ed. 595 (1950).

Section (b)(1) of this quotation directly applies to the Honeycutt situation: Judge Van Meter's 1949 signed court order appointing counsel is a piece of undisputed written evidence that renders Honeycutt's belated and self-serving oral testimony extremely doubtful.

In *Webster v. Estelle*, 505 F.2d 926 (5th Cir. 1974), *cert. denied*, 421 U.S. 918, 95 S.Ct. 1581, 43 L.Ed.2d 785 (1975), the Fifth Circuit had before it a situation factually very similar to that presented here—uncorroborated testimony of a petitioner in contrast to documentary records. The court reversed the granting of the writ as a matter of law, saying:

> "[T]he District Court gave insufficient weight to the State's documentary evidence. Official records are entitled to a presumption of regularity." 505 F.2d at 929–30.

Similarly, in *United States ex rel. Barnes v. Fay*, 219 F.Supp. 152, 155 (S.D.N.Y.1963), the court said:

> "[T]he relator's bare allegations as to the events of thirty-five years ago, are insuf-

ficient, standing alone, to overcome the presumptive validity of the court records . . . ."

We cannot accept the proposition that a judge in Oklahoma signed his name to a state of facts which never occurred and that he was not mindful of the Constitution of his own state requiring appointment of counsel. The very form of the order indicates compliance with these constitutional requirements. In contrast, the acceptance of petitioner's uncorroborated, self-serving claim, belatedly made some fifteen years after he claims his fellow prisoners had made him aware of his rights, leads inescapably to the conclusion that the trial court's conclusions on the law and the facts are clearly erroneous.

*Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), relied upon by the trial court and appellee to support the conclusion that petitioner's 1949 conviction was "constitutionally impermissible", is not dispositive here. In *Burgett* the judgment specifically stated that the defendant appeared "without Counsel". 389 U.S. at 112, 88 S.Ct. 258. Similarly, in *United States ex rel. Lasky v. LaVallee*, 472 F.2d 960 (2d Cir. 1973), the words "by his attorney" were excised, indicating that the defendant was without counsel.

Furthermore, the burden of proof is on Honeycutt to overcome the strong presumption of regularity in state judicial proceedings. His own self-serving declarations do not meet this burden.

The State also claims that it was irrevocably prejudiced by Honeycutt's undue delay in bringing this petition. Under the circumstances of this case, Honeycutt's at least fifteen-year delay has substantially deprived the State of the opportunity to rebut Honeycutt's allegations. Since Honeycutt has advanced no substantial explanations for his long and prejudicial delay on this additional ground, his petition may be dismissed.

Rule 9(a) of the Rules Governing § 2254 Cases provides:

"*Delayed Petitions.* A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred."

The Advisory Committee Note explaining Rule 9(a) indicates that it was designed to deal with the type of situation presented here. The Advisory Committee Note states:

"This rule is intended to minimize abuse of the writ of habeas corpus by limiting the right to assert stale claims . . . . .

. * * * * * *

The grounds most often troublesome to the court are ineffective counsel, denial of right of appeal, plea of guilty unlawfully induced, use of a coerced confession, and illegally constituted jury. . . .
When they are asserted after the passage of many years, both the attorney for the defendant and the state have difficulty in ascertaining what the facts are. It often develops that the defense attorney has little or no recollection as to what took place and that many of the participants in the trial are dead or their whereabouts unknown. The court reporter's notes may have been lost or destroyed, thus eliminating any exact record of what transpired.

* * * * * *

Subdivision (a) is not a statute of limitations. Rather, the limitation is based on the equitable doctrine of laches. 'Laches is such delay in enforcing one's rights as works disadvantage to another'. 30A C.J.S. Equity § 112, p. 19.

* * * * * *

The standard used for determining if the petitioner shall be barred from asserting his claim is consistent with that used in laches provisions generally. The petitioner is held to a standard of reasonable diligence. Any inference or presumption

arising by reason of the failure to attack collaterally a conviction may be disregarded where (1) there has been a change of law or fact (new evidence) or (2) where the court, in the interest of justice, feels that the collateral attack should be entertained and the prisoner makes a proper showing as to why he has not asserted a particular ground for relief."

██ The instant case exemplifies the situation which Rule 9(a) seeks to avoid. Honeycutt filed his petition almost thirty years after the challenged trial. His claim that he was not represented by counsel falls within the ambit of those in which "both the attorney for the defendant and the state have difficulty in ascertaining what the facts are". No transcript of the Oklahoma proceeding is available. Further, counsels' efforts to locate judge or counsel who could refute or substantiate Honeycutt's testimony have been unavailing. Thus, the long delay has prejudiced the State in its ability to respond to the petition.

Honeycutt claims that he delayed in filing his petition because there was no procedural device in New York to challenge the constitutionality of his Oklahoma conviction until the mid-1960's. This argument must be rejected. It is true that under N.Y. Penal Law § 1942, in effect in 1954, a defendant could not challenge in a State court the propriety of a predicate felony. See, e. g., People v. Wilkins, 28 N.Y.2d 213, 219, 321 N.Y.S.2d 87, 91, 269 N.E.2d 803, 806 (1971) ("Prior to [the statutory amendment of] 1964, a challenge to the constitutionality of a previous New York conviction had to be made by a writ of error coram nobis in the court where the defendant had been convicted, and no procedure was available in New York to challenge out-of-state convictions.") However, in 1964, the New York statute under which sentence was imposed was amended by § 470–a, of the N.Y. Code of Criminal Procedure, to permit a defendant, as a matter of state law, to attack the constitutionality of his prior convictions.[3] That amendment was subsequently held to be retroactive. People v. Broderick, 24 App.Div.2d 638, 262 N.Y.S.2d 188, 190 (2d Dept. 1965); accord, People v. Rainey, 25 App.Div.2d 657, 267 N.Y.S.2d 973, 975 (2d Dept. 1966). Thus, Honeycutt had a remedy available in the New York courts by 1965.

Honeycutt further attempts to explain his delay by claiming that he only learned of the existence of a right to counsel when serving his 1954 New York sentence. The Supreme Court did not explicitly recognize a defendant's constitutional right to counsel until 1963, the year of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). At the hearing on January 17 before the trial court, Honeycutt testified:

"The only time I found out that a person should have an attorney, I was in a state prison in New York on a '54 conviction about three years after I got that conviction in '54."

Thus Honeycutt knew of the existence of a right to counsel more than fifteen years prior to institution of this suit. He should not be heard to claim that his delay was justified.

██ Under the facts of this case, we also find that the equitable doctrine of laches should apply under Rule 9(a). Honeycutt has waited more than fifteen years to raise his claim, in circumstances where the detailed factual reconstruction necessary to test the validity of the claim would be most difficult, if not impossible. See Johnson v. Riddle, 562 F.2d 312 (4th Cir. 1977). While it is important that one convicted of crime in violation of constitutional principles should be accorded relief, it is also important that reasonable diligence be required in order that litigation may one day be at an end. Rule 9(a) guards the state's legitimate expectation that it will not be called upon, without due cause, to defend the integrity of convictions that occurred many years ago, where records and witnesses are

---

3. The amendment was carried forward in substance by § 400.20 of the current N.Y. Criminal Procedure Law. (McKinney 1971).

no longer available. *See Cavett v. Ellis*, 578 F.2d 567, 570 (5th Cir. 1978).

In summary, it is impossible to compare Honeycutt's delayed claim as to 1949 events which he does not buttress with supporting testimony to give credence to his self-serving assertions against a written court order, required by the Oklahoma Constitution and having every appearance of regularity and not have a "definite and firm conviction that a mistake has been committed". *United States v. Gypsum, supra*, 333 U.S. at 395, 68 S.Ct. at 542.

The judgment of the district court granting the writ of habeas corpus is reversed.

FRIENDLY, Circuit Judge (concurring in the result):

It has long "been recognized that the lapse of time affects the quantum of required proof as well as the good faith and credibility of the moving party," *Dean v. North Carolina*, 269 F.Supp. 986, 992 (M.D. N.C.1967). As the Court of Appeals for the District of Columbia noted, "[w]hile lapse of time alone may not warrant denial of the issuance of the writ, it is certainly true that one who attacks the validity of his plea so long after the proceedings in the District Court must carry a heavy burden if he is to overcome the regularity of his conviction," *Pasley v. Overhosler*, 108 U.S.App.D.C. 332, 333, 282 F.2d 494, 495 (D.C. Cir. 1960) (per curiam). See also *Phillips v. Black*, 367 F.Supp. 774, 776 (E.D.Ky.1973), *aff'd mem.*, 497 F.2d 924 (6 Cir. 1974) (lapse of 16 years prior to collateral attack "increases the burden on the petitioner to overcome the presumption of the regularity of his conviction"); *Bradley v. Cowan*, 500 F.2d 380, 381 (6 Cir. 1974) (per curiam) ("That issue was not raised by petitioner until five years after his conviction and after his counsel had appealed his conviction to the Supreme Court are matters to be considered in weighing the merits of petitioner's allegations.").

Because of the failure of the district judge to give appropriate weight to this principle, as well as for many of the reasons stated in Judge Moore's opinion, the court's conclusion that Honeycutt did not have the assistance of counsel cannot stand.

Since this requires a reversal with a direction to dismiss the petition, I see no occasion to consider the State's alternative claim of laches.

FEINBERG, Circuit Judge (concurring in the result):

I concur in the result for the reasons stated in Judge Friendly's opinion. I also note that this case is clearly distinguishable from *United States v. DuShane*, 435 F.2d 187 (2d Cir. 1970). In that case we held that when a defendant was not represented by counsel in an earlier state court proceeding, a federal court was not justified in presuming a waiver of the right to counsel when the sole evidence supporting such a finding consisted of (1) affidavits of a deputy clerk and the state prosecutor stating that the state court judge customarily appointed counsel to defendants who desired, but could not afford, an attorney; and (2) the state statutory requirement that counsel be appointed in such cases. Here, in contrast, there is no evidence conclusively showing that defendant was not represented by counsel, and his naked assertion that he was deprived of his Sixth Amendment right to counsel is countered by a document signed by the trial judge specifically stating that the defendant was assigned counsel.