**Larry N. HOWARD, Petitioner,**

**v.**

**Charles L. WOLFF, Director, Nevada State Prison, Respondent.**

**No. CIV–R–79–89–ECR.**

United States District Court, D. Nevada.

Feb. 13, 1981.

---

Martin H. Wiener, Reno, Nev., for petitioner.

Larry N. Howard, in pro. per.

Richard H. Bryan, Atty. Gen., Carson City, Nev., for respondent.

## ORDER

EDWARD C. REED, Jr., District Judge.

■ Larry N. Howard, an inmate at the Nevada State Prison, has petitioned for a Writ of Habeas Corpus on five separate grounds, four of which were denied by order of this Court on September 6, 1979. On April 29, 1980, June 30, 1980, and December 22, 1980, evidentiary hearings were held in respect to the remaining claimed ground for habeas, to wit: whether the guilty plea entered by petitioner on December 12, 1962, to the charge of "Accessory to Robbery" was made voluntarily and understandingly. Review in this case is also proper since the 1962 conviction petitioner seeks to invalidate has been used to enhance the sentence petitioner received on account of a subsequent conviction. *United States v. LaVallee,* 330 F.2d 303 (2nd Cir. 1964); see *also, Honeycutt v. Ward,* 612 F.2d 36 (2nd Cir. 1979). Petitioner's standing to bring this petition is conceded.

The principal issue addressed by the parties in the presentation of evidence and testimony was whether petitioner believed at the time of his plea that he was pleading guilty to a gross misdemeanor rather than a felony. Without question, at the time of the plea the crime of Accessory to Robbery was a felony under Nevada law. *See,* NRS 193.120(2), NRS 195.040.

Petitioner testified in the present proceedings that because he had two prior felony convictions, he was conscious of the habitual criminal statutes providing an enhancement in penalty on a third felony conviction. For that reason he says he recalls very specifically his understanding in 1962 that he was pleading only to a gross misdemeanor.

There is one piece of possibly corroborative evidence to support petitioner's position. This is Exhibit 1 in these proceedings, a copy of the Amended Information to which petitioner pleaded, taken from the official file of the state court. On that copy, the printed word "felony" appears to have been lined out with a pen or pencil and words generally undecipherable, possibly reading "gross mis" or "gross misd" (and also in turn apparently lined out) interlined in handwriting above the word "felony." Adjacent to the interlineation are the initials "H.F.A."

Mr. Herbert F. Ahlswede, then deputy District Attorney of Washoe County, Nevada, signed the Amended Information and the appended witness list. Testifying in this case, he is unsure as to whether these

initials are his. He is suspicious of the "F" and the tail on the "A", but in all he is not certain of the authenticity of the initials. To the layman the initials look strikingly similar to those same letters in Mr. Ahlswede's signatures which appear on the same document.

Petitioner also testified that he had a private interview with Mr. Ahlswede prior to entry of his plea and at that time was given to believe he would be allowed to plead to a gross misdemeanor. Mr. Ahlswede recalls such an interview, but has only a hazy recollection of the details of the meeting. However, he emphatically denies that he could have led petitioner to believe he would be allowed to plead to a gross misdemeanor.

At the hearing on December 22, 1980, Mr. Howard testified that Mr. Ahlswede showed him a printed information form which he claims had been amended in the manner of Exhibit 1, the file copy of the Information found in the court file. The file copy of the Information, taken from the District Attorney's file, does not show the alteration crossing out the word "felony" and making the interlineation. This is some corroboration of Mr. Ahlswede's testimony. It seems likely that the District Attorney's file would have been changed if Mr. Ahlswede had in fact shown the altered Information to Mr. Howard.

On stipulation of the parties Frank Hart was appointed by the Court as the Court's expert witness to review the subject Information in an effort to ascertain exactly what alterations were made to the printed form and whether Mr. Ahlswede placed his initials at the point of the alteration. Mr. Hart filed a written report (which was made part of the record of the case) and testified in Court. He found that both the word "felony" on the printed form of Information and the interlined words "gross mis." were lined out by a pencil or pen. He was unable to determine if Mr. Ahlswede's initials were on the form. Mr. Hart was unable to reach a conclusion in answer to these questions because of a lack of adequate exemplars of the initials of Mr. Ahls-

wede from the time period of the subject proceedings.

The remainder of the evidence adduced at the hearing militates quite strongly against petitioner's position. From the transcript of the plea sentencing hearing on December 12, 1962, and Mr. Ahlswede's testimony, it seems quite clear that petitioner's plea was the result of a plea bargain whereby the charges were reduced from "Robbery" to "Accessory to Robbery." At the plea hearing Mr. Ahlswede stated that he did not have sufficient evidence to convict on the robbery charge, but at the instant hearing he explains he argued in this vein to persuade the judge to grant probation. The accessory charge did permit a sentence of probation. The credible evidence is that the plea bargain was obtained because of services rendered by petitioner as an informant to the police.

The principal concern of attorneys and the judge at the plea hearing' was for the safety of petitioner, who had become a police informant and was, it was claimed, in personal danger if he were sentenced to the Nevada State Penitentiary. Arrangements were worked out at the hearing so that the two- to five-year prison sentence to be imposed would be suspended, obviating incarceration in the state prison. Petitioner was also fined $1,000.00, to be worked off at the rate of $4.00 per day (250 days) in the county jail. He was also sentenced to a year's probation to commence on release from jail.

Petitioner's stated concern about a felony conviction, as it might relate to an habitual criminal charge, seems to the Court incredible. It is unlikely that a person in Mr. Howard's shoes, where the conviction does not carry a possible habitual criminal enhancement penalty, will be looking down the line to the commission of a further crime and consequent conviction which could at a later date result in an habitual sentence. Rather, it may be inferred that petitioner really had the same concern as the judge and the attorneys, that probation be given to avoid imprisonment in the penitentiary. *Cf. Honeycutt v. Ward,* 612 F.2d

36, *supra* (self serving declaration of habeas petitioner as to allegedly uncounseled conviction resulting habitual sentencing insufficient to overcome strong presumption of regularity as to state proceeding.)

The record before the Court supports the proposition that petitioner knew he was pleading to a felony. Mr. Howards' attorney, Marshall Bouvier, an experienced criminal defense lawyer, testified that he was highly conscious of the difference between a gross misdemeanor and a felony and would have spoken up emphatically had his client been sentenced for a felony (as he was), after a plea to a gross misdemeanor.

While Mr. Bouvier does not recall many specifics of the case, he testified it was "not possible" that petitioner believed himself to be pleading to a gross misdemeanor rather than a felony. He does recall the plea negotiations through the fall of 1962 to reduce the gravity of the charges. He recalls that the charges were reduced because of assistance which the petitioner had given to police. It should again be noted that the transcript of the plea hearing also bears out this reason for the reduction in the charges. Mr. Bouvier's file contained a copy of the Amended Information (Exhibit 4) (which does not contain the handwritten amendments or initials on the state court file copy, Exhibit 1). Mr. Bouvier believes he reviewed the Amended Information with petitioner before the plea was entered. This particular file copy of the Amended Information clearly indicates that the charge to which petitioner was pleading was a felony.

A careful examination of the transcript of the 1962 plea hearing strongly supports the proposition that petitioner knew he was pleading to a felony.

In 1966, petitioner was again convicted of "Attempted Robbery." The transcript of the sentencing hearing (to sentence petitioner as an habitual criminal), which followed that conviction, also supports the state's view of the 1962 proceeding. There the judge recites petitioner's prior convictions, including the 1962 conviction, which he specifically denominates as a felony. This was done without objection of petition-er or his counsel. The habitual sentence (life imprisonment) rendered by the 1966 Court is specifically based in part on the 1962 conviction as a felony. Petitioner offers no credible explanation as to why denomination of the 1962 conviction was allowed to pass without challenge as a felony in the 1966 proceedings.

■  So, while the state court copy of the Amended Information with its interlineations and initials is indeed troublesome, the weight of the evidence adduced at the instant hearing is clearly that petitioner knew he was pleading to a felony in the 1962 proceedings. Only the self-serving and incredible testimony of petitioner and the garbled copy of the Amended Information, contained in the state court file, weigh in petitioner's favor.

■  We must then turn to the question of whether, aside from the issue discussed at length above, petitioner's plea in 1962 was voluntarily and understandingly entered upon advice of the constitutional rights waived by the guilty plea. The plea clearly antedates *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and hence the *Boykin* case, which is not retroactive in effect, does not provide the tests against which the plea is to be measured. *Spencer v. Eyman*, 439 F.2d 1136 (9th Cir. 1971). Rather, the "totality of the circumstances" test is to be applied to determine if the plea was voluntarily and understandingly made. *Brown v. Swenson*, 487 F.2d 1236 (8th Cir. 1973).

The pre-*Boykin* test does not require the record to affirmatively reflect specific procedural pre-plea warnings given petitioner. *Id.* The tests here applicable to ascertain whether the "totality of the circumstances" indicate a voluntary and understanding plea depends on whether:

(1) Was the petitioner competent? The record indicates that while relatively uneducated, he was competent to understand the charges and assist in his defense.

(2) Was petitioner counseled? The testimony of Mr. Bouvier is to the effect

petitioner was counseled as to the nature of the charge, the maximum penalties which he faced, the possibilities of probation, and whether upon a trial he might in fact be convicted.

(3) Was petitioner induced to enter his plea to limit the possible penalty? The evidence shows that this is precisely why the plea of guilty was entered in 1962.

The fundamental requirements of the "totality" test are met in what occurred in the 1962 proceedings. *See, Winford v. Swenson,* 517 F.2d 1114 (8th Cir. 1975). Petitioner's guilty plea was voluntarily and understandingly entered.

█ The burden of proving a constitutional claim on federal habeas corpus review lies with the petitioner. *See, Wolfrath v. LaVallee,* 576 F.2d 965, 971 (2nd Cir. 1978). This burden requires that he demonstrate that his claim is valid by a preponderance of evidence. *See, Teubert v. Gagnon,* 478 F.Supp. 474 (D.Wis.1979), *citing Bellew v. Gunn,* 532 F.2d 1288 (9th Cir. 1976).

The Court is cognizant that it would be impermissible to place such a burden upon a state prisoner in a § 2254 action who is alleging that his guilty plea was involuntary and the record in this regard was silent. *Sena v. Romero,* 617 F.2d 579 (10th Cir. 1980). In *Sena,* the court, in light of the requirement of an affirmative showing of voluntariness established by *Boykin v. Alabama, supra,* felt that a silent record shifts the burden to the government of proving that guilty plea was knowing, voluntary, and intelligently made. *Sena, supra* at 580. The court also stated, relying on *United States v. Pricepaul,* 540 F.2d 417 (9th Cir. 1976), that if the record is silent, reversal would not be required if the voluntariness and intelligence of the plea are proved at a post conviction hearing. *Sena, supra,* at 580, *citing, Pricepaul, supra,* at 422–424.

█ The Court, in the course of its own evidentiary hearings, has been presented with various transcripts of state proceedings to which the petitioner was a party as a defendant, including the transcript of the 1962 plea and sentencing hearing now in question. Since the hearing was pre-*Boykin,* no affirmative showing of voluntariness was required. *Spencer, supra.* The proceeding must be evaluated under the "totality of circumstances" approach to determine the plea's validity. *Brown, supra.* In these circumstances a presumption of regularity must attach to the state proceedings. Plaintiff has not met his burden in overcoming this presumption. Furthermore, even if the state did have the burden of proving that the plea was valid due to a silent record, which we do not have, the evidence presented by the state conclusively demonstrates that petitioner's plea was voluntary, knowing, and intelligent. *See, Wrighting v. Clannon,* 484 F.Supp. 122 (N.D.Cal.1980).

Despite the very able efforts of petitioner's counsel, petitioner's application for writ of habeas corpus must be denied.

The within Order shall constitute findings of fact and conclusions of law for this case.

IT IS THEREFORE HEREBY ORDERED that said Petition for Writ of Habeas Corpus is denied.