703 F.2d 44
 SPENCER KELLOGG, DIVISION OF TEXTRON, INC., Plaintiff-Appellee,
v.
S.S. "MORMACSEA" and S.S. "Mormacvega", their engines, boilers, etc.,
v.
MOORE-McCORMACK LINES INCORPORATED, Defendant-Appellant.
 No. 706, Docket 82-7432.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 17, 1983.
Decided March 16, 1983.
 
 William R. Connor, III, New York City (Bigham, Englar, Jones & Houston, New York City, of counsel), for plaintiff-appellee.
 James E. Ryan, New York City (Dougherty, Ryan, Mahoney, Pellegrino, Giuffra & Zambito, New York City, of counsel), for defendant-appellant.
 Before LUMBARD, MANSFIELD and MESKILL, Circuit Judges.
 LUMBARD, Circuit Judge:
 
 
 1
 In this admiralty suit, carrier-appellant Moore-McCormack Lines, Inc. ("Moore") appeals from an award of $15,312.68 plus costs and interest entered on April 27, 1982 in favor of consignee-appellee Spencer Kellogg, Division of Textron, Inc. ("Kellogg") by Judge Sofaer, Southern District of New York. The parties waived a trial below and submitted all evidence in written form. Judge Sofaer found, in an opinion and order reported at 538 F.Supp. 230, that the appellees had established liability and damages for short deliveries of castor oil under the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. Secs. 1300-1315. We agree. As the record below supports this conclusion, we affirm.
 
 
 2
 Kellogg contracted with Moore for two equal shipments of 570,000 kilos of castor oil from Recife, Brazil to Brooklyn, New York aboard the appellant's vessels, the S.S. Mormacvega and the S.S. Mormacsea. Prior to shipment, the vessels' tanks were checked and cleared for tightness by the American Bureau of Shipping and the Sociedade Brasileira de Superintendencia S.A. To establish the weight of the castor oil loaded on the vessels, the trucks delivering the oil were weighed before and after loading. The bills of lading, accepted without dispute by the appellant at the time, stated that each vessel received 570,000 kilos of castor oil. The bills of lading also contained the following disclaimer:
 
 
 3
 "WEIGHT OF CARGO DETERMINED BY A THIRD PARTY, AND ISSUANCE OF THIS BILL OF LADING SHALL NOT BE AN ADMISSION BY CARRIER THAT WEIGHT STATED IN THIS BILL OF LADING IS ACCURATE."
 
 
 4
 The castor oil was loaded on the Mormacvega in September, 1977 and the vessel arrived in New York later that month; the Mormacsea was loaded in October, 1977 and arrived in New York on November 3, 1977. The appellee's barge, the Manoleine, met the vessels in New York. The appellant had sealed the sounding tubes in its tanks preventing accurate ullages[1] of the cargo before it was discharged onto the barge. Measurements conducted through the manhole covers of the tanks, a less precise procedure, did, however, reveal shortages. Subsequent shortages noted both on board the Manoleine and at the oil's final destination, storage tanks in Weehawken and Edgewater, New Jersey, further established that appellee did not receive the full amount shipped. The discrepancies in each case between the quantities shipped and three different measurements of what was delivered are reflected in the chart below:Under COGSA, a prima facie case of liability is established when the consignee proves (i) delivery of the goods in satisfactory condition and (ii) arrival of less cargo than was delivered. Westway Coffee Corp. v. M.V. Netuno, 675 F.2d 30, 32 (2d Cir.1982). We agree with Judge Sofaer that Kellogg satisfied both requirements for recovery. First, the bills of lading constitute prima facie evidence that Moore received 1,140,000 kilos of castor oil in satisfactory condition unless "under the customs of any trade the weight of any bulk cargo inserted in the bill of lading is a weight ascertained or accepted by a third party other than the carrier or the shipper, and the fact that the weight is so ascertained or accepted is stated in the bill of lading...." 46 U.S.C. Sec. 1310.
 
 
 5
 The appellant argues that the instant disclaimers fall within this COGSA exception and prevent the bills of lading from qualifying as prima facie evidence. We disagree. Although Moore submitted evidence of Kellogg's usual manner of handling its castor oil shipments, it did not submit evidence with regard to the custom in the castor oil trade. Accordingly, Judge Sofaer's acceptance of the bills of lading as prima facie evidence of the appellant's receipt of two 570,000 kilo shipments was not erroneous.
 
 
 6
 Second, the above charts demonstrate that Kellogg did not receive its full shipment. Moore attempts unpersuasively to discredit as inaccurate the figures supplied by Kellogg that are reflected in the charts. Obviously, a carrier is in the best position to measure the cargo. Having failed to do so, Moore cannot now attack the shortages established by documentary evidence.
 
 
 7
 Once Kellogg established a prima facie case, the burden shifted to Moore "to show that neither the actual fault or privity of the carrier nor the fault or neglect of the agents or servants of the carrier contributed to the loss or damage." 46 U.S.C. Sec. 1304(2)(g). Appellant failed to explain how the shortages occurred or why the sounding tubes in the tanks were sealed thus prohibiting a reliable measurement of the cargo. Moore issued the bills of lading and did not make its own measurements. Judge Sofaer properly held that absent affirmative proof to the contrary, Moore is liable for any shortages.
 
 
 8
 The only issue remaining is one of damages. We agree with Judge Sofaer's decision to award damages for the differences between the amount of castor oil shipped and the amount received at the storage tank facilities.[3] Although the storage tank measurements reflect the greatest shortages, these figures also reflect "the quantity of cargo that a consignee was actually able to sell or use...." 538 F.Supp. at 236. Judge Sofaer fairly and accurately calculated damages based on the amount of castor oil ultimately received by Kellogg.
 
 
 9
 Affirmed.
 
 
 
 [1]
 "Ullage" is the amount of empty space in a liquid cargo tank. It is measured by taking soundings from one or more "ullage holes" in the hatch covers of a tanker. R. de Kerchove, International Maritime Dictionary 878 (1961)
 MORMACVEGA
 Quantity
 Shipped Alleged
 (lbs.) (from Shortage
bill of lading) Quantity Delivered (less .5%)[2]
----------------------------------------------------------------
 1,256,622 1,237,565 12,773.89
 (on board prior to discharge)
 1,234,598 15,740.89
 (to Manoleine)
 1,231,264 19,074.89
 (to storage tanks)
 MORMACSEA
 Quantity
 Shipped Alleged
 (lbs.) (from Shortage
bill of lading) Quantity Delivered (less .5%)[2]
----------------------------------------------------------------
 1,256,622 1,239,507 10,831.89
 (on board prior to discharge)
 1,236,897 13,441.89
 1,231,250 19,088.89
 (to storage tanks)
 
 
 [2]
 One half of one percent (.5) is the normal trade allowance applied to weight measurements to compensate for differences in weighing techniques
 
 
 [3]
 Judge Sofaer's original inadvertent reversal of the figures reflecting the amount of cargo on board the vessels prior to discharge and the amount received by the storage tanks was corrected during his damage calculations. This confusion caused the district judge to state erroneously that the smallest shortages were measured at the storage tanks. As the district court's computation of damages was correct despite this confusion, we see no need to remand. See Honeycutt v. Ward, 612 F.2d 36, 40 (2d Cir.1979), cert. denied, 446 U.S. 985, 100 S.Ct. 2969, 64 L.Ed.2d 843 (1980)